**EXECUTION COPY**

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

ARTHUR J. COHN, Derivatively on Behalf of
Nominal Defendant CHARTER
COMMUNICATIONS, INC.,

                Plaintiffs,

    v.

RONALD L. NELSON, PAUL G. ALLEN,         No. 4:03-CV-00177-CAS
MARC B. NATHANSON, NANCY B.
PERETSMAN, WILLIAM D. SAVOY, JOHN H.
TORY, CARL E. VOGEL, and LARRY W.
WANGBERG,

                Defendants,

and

CHARTER COMMUNICATIONS, INC.,

                Nominal Defendant.

---

## STIPULATION OF SETTLEMENT

      This Stipulation of Settlement (the "Stipulation"), dated as of January 24, 2005, is made and entered into by and among the following parties, by and through their respective counsel of record:  (1) the Settling Derivative Plaintiffs (as defined below), on behalf of themselves and derivatively on behalf of Charter Communications, Inc. ("Charter" or the "Company," as defined below); (2) the Settling Derivative Defendants (as defined below); and (3) Arthur Andersen LLP (as defined below, "Andersen") (collectively, and as defined below, the "Settling Derivative Parties").  The Settlement set forth in this Stipulation (the

1244952

"Settlement") is intended by the Settling Derivative Parties to fully, finally and forever resolve, discharge and settle the Released Claims (as defined below), upon and subject to the terms and conditions hereof.

## I.   THE DERIVATIVE ACTIONS AND RELATED LITIGATION

### 1.   Background

Charter is a broadband communications company.  The Company provides analog video, digital video, cable modem, and telephony services to more than 6 million customers residing in 37 different states.  Charter is headquartered in St. Louis, Missouri.  Andersen served as Charter's outside auditor for fiscal years 1999-2001.

On July 18, 2002, a Merrill Lynch analyst issued a report that questioned several of Charter's accounting practices, including the capitalization of certain customer service representative costs.  The following day, the price of Charter's common stock declined from $4.06 per share to $3.50 per share.

On August 16, 2002, Charter announced that the U.S. Attorney's Office for the Eastern District of Missouri had initiated a grand jury investigation into certain of Charter's operations.  The day after this announcement, the price of Charter's common stock declined from $2.71 per share to $2.53 per share.

On April 1, 2003, Charter announced that it was restating its financial reports for 2000 and 2001, and the first three quarters of 2002.

On July 24, 2003, a Grand Jury indicted David G. Barford, Kent Kalkwarf, David L. McCall, and James H. Smith, III for a conspiracy allegedly carried out from in or about July 2001 through March 2002 to inflate Charter's subscriber numbers and subscriber growth numbers.  It further charged Messrs. Barford and Kalkwarf with causing Charter to enter into allegedly sham agreements with Scientific-Atlanta, Inc. ("Scientific-Atlanta") and Motorola, Inc. ("Motorola") in the Fall of 2000.  Messrs. McCall, Barford, Smith, and Kalkwarf pled guilty to one count of conspiracy to commit wire fraud.

On July 27, 2004, the Securities and Exchange Commission ("SEC") filed an Order Instituting Cease-And-Desist Proceedings, Makings Findings, And Imposing A Cease-And-Desist Order Pursuant to Section 21C of the Securities Exchange Act of 1934 (the "SEC Order") on the consent of Charter, which neither admitted nor denied the allegations therein, regarding certain subscriber count practices and accounting for certain agreements with Motorola and Scientific-Atlanta.  The SEC Order did not allege any wrongdoing regarding Charter's accounting, except with respect to the agreements with Motorola and Scientific-Atlanta.

### 2.   The Derivative Actions

On or after September 12, 2002, three shareholder derivative actions were filed in the Circuit Court for the City of St. Louis (the "State Court"), captioned *Kenneth Stacey, Derivatively on Behalf of Nominal Defendant Charter Communications, Inc. v. Ronald L.*

*Nelson, et al., and Charter Communications, Inc.*, No. 022-10625, *Aaron Cane, Derivatively on behalf of Nominal Defendant Charter Communications, Inc., v. Ronald L. Nelson, et al., and Charter Communications, Inc.*, No. 022-11450, and *Thomas Schimmel v. Paul Allen, et al., and Charter Communications, Inc.*, No. 044-00858 (the "State Court Derivative Actions"). On December 17, 2002, the Court granted Stacey and Cane's motion to: (1) consolidate the State Court Derivative Actions; and (2) appoint Schiffrin & Barroway, LLP, as Lead Counsel in the State Court Derivative Actions.

On February 12, 2003, a shareholder derivative action was filed in the United States District Court for the Eastern District of Missouri, captioned *Arthur J. Cohn, Derivatively on behalf of Nominal Defendant Charter Communications, Inc. v. Ronald L. Nelson, et al., and Charter Communications, Inc.*, Case No. 4:03CV00177 ERW (the "Federal Court Derivative Action," and together with the State Court Derivative Actions, the "Derivative Actions").

The Complaints in the Derivative Actions named as defendants the following former and/or current officers and members of Charter's Board of Directors: Ronald L. Nelson, Paul G. Allen, Marc B. Nathanson, Nancy B. Peretsman, William D. Savoy, John H. Tory, Carl E. Vogel, and Larry W. Wangberg. The Complaints in the State Court Derivative Actions also named Andersen as a defendant. Generally, Plaintiffs in the Derivative Actions alleged that the Charter Board of Directors breached fiduciary duties owed to Charter and its shareholders by, among other things, causing or allowing the Company to disseminate to the market materially misleading inaccurate information, placing their own personal interests above the Company's, failing to prevent the Company and its officers and directors from committing acts which would, and did, injure the Company, and failing to establish and maintain adequate internal accounting controls at the Company.

By agreement of all the parties, all formal proceedings in the Derivative Actions were voluntarily stayed pending resolution of Motions to Dismiss in the Class Action (as defined below).

### 3. The Class Action

On or after July 31, 2002, fourteen federal securities class action complaints, including *StoneRidge Investment Partners LLC v. Charter Communications, Inc.*, No. 4:02-CV-1186 CAS, were filed against Charter and various other defendants, including Paul G. Allen, Jerald L. Kent, Carl E. Vogel, Kent Kalkwarf, David G. Barford, Paul E. Martin, David L. McCall, Bill Shreffler, Chris Fenger, James H. Smith III, Scientific-Atlanta, Motorola, and Andersen. These complaints were consolidated, pursuant to order of the Multi-District Litigation Panel, in the U.S. District Court for the Eastern District of Missouri, and captioned *In re Charter Communications, Inc. Securities Litigation*, MDL Docket No. 1506 (CAS) (the "Class Action").

By Order dated April 16, 2003, the Court appointed StoneRidge Investment Partners, LLC as lead plaintiff (hereinafter "Class Action Plaintiff"), and appointed Pomerantz Haudek Block Grossman & Gross LLP as lead counsel (hereinafter "Class Action Plaintiff's Counsel").

Class Action Plaintiff filed an Amended Consolidated Class Action Complaint (the "Class Action Complaint") on August 5, 2003. The Class Action Complaint asserted claims against Charter, various individual defendants, Andersen, Scientific-Atlanta, and Motorola for alleged violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder, and sections 11, 12, and 15 of the Securities Act of 1933. The Class Action Complaint sought recovery for purchasers of Charter common stock during the period of November 8, 1999 through July 17, 2002, and damages through August 16, 2002.

On August 26, 2003, Charter filed a Motion to Dismiss the Class Action, which Class Action Plaintiff opposed. Other defendants in the Class Action filed Motions to Dismiss between September 8, 2003 to October 17, 2003, which the Class Action Plaintiff also opposed. The hearing on these Motions to Dismiss has been taken off-calendar in light of the Settlement of the Class Action.

By Memorandum Decision dated October 12, 2004, the Honorable Charles A. Shaw denied the Motion to Dismiss the Amended Complaint against Andersen, but granted the Motions to Dismiss by Scientific-Atlantic and Motorola. Class Action Plaintiff filed a motion for reconsideration on October 26, 2004, which was denied on December 20, 2004. Class Action Plaintiff has appealed this decision.

## 4.    Settlement Negotiations and Mediation

In or around March 2004, Settling Derivative Plaintiffs and their counsel agreed to coordinate their litigation efforts going forward. At approximately this same time, Derivative Settlement Counsel began a dialogue with counsel for the Settling Derivative Defendants regarding the possible settlement of the Derivative Actions. These discussions, which commenced in or around April 2004, lasted throughout the Summer of 2004. During the course of these discussions, the Settling Derivative Parties exchanged certain non-public information with each other. Thereafter, on August 2, 2004, the Settling Derivative Parties (except Andersen) participated in a joint mediation session with the Settling Class Action Parties (except Andersen). The Honorable Edward A. Infante (Ret.) presided over this joint mediation, which occurred after extensive briefing of Judge Infante by the Settling Class Action Parties and the Settling Derivative Parties. At the August 2, 2004 mediation, all settling parties and Judge Infante discussed, among other things, the respective claims and defenses, expert damages analyses, legal analyses, the discovery and motion practice conducted and expected to be conducted in the Class Action and the Derivative Actions, the evidence expected to be offered by the parties at trial, and other important factual and legal issues and matters relating to the merits of the Class Action and the Derivative Actions.

The Settling Derivative Plaintiffs and the Settling Derivative Defendants were able to reach an agreement in principle following the August 2, 2004 mediation, which was memorialized in a Memorandum of Understanding (the "MOU") dated August 5, 2004. The substance of the MOU is reflected in and superseded by this Stipulation. Also on August 5, 2004, the Settling Class Action Parties agreed to a Memorandum of Understanding regarding settlement of the Class Action.

Subsequent to the Court's October 12, 2004 decision, negotiations took place between the Class Action Plaintiff and Andersen that resulted in an agreement to settle all claims and potential claims in the Class Action and Derivative Actions against Andersen.

Concurrently with the submission of this Stipulation, the Settling Class Action Parties will submit Stipulations of Settlement for the Class Action to the Court, dated as of January 24, 2005, and attached hereto as Exhibit A (without exhibits). The Class Action Settlement is conditioned, among other things, upon this Settlement being approved by the Court, a Judgment being entered that becomes Final, and the dismissal of each of the Derivative Actions with prejudice.

**5.    Discovery, Investigation, and Research Conducted by Derivative Plaintiffs**

Derivative Settlement Counsel (as defined below) has conducted a thorough investigation of the facts and legal issues associated with the prosecution and Settlement of the Derivative Actions. This discovery and investigation has included, *inter alia*: (1) the retention of a private investigator to assist in ascertaining the nature of the relationships among the Defendants; (2) consultations with various experts, including a corporate governance expert; (3) a comprehensive review of Charter's public filings, annual reports, and other public statements; (4) research into the applicable law with respect to the claims asserted in the Derivative Actions and the potential defenses thereto; (5) inspection of tens of thousands pages of documents produced by Settling Derivative Defendants pursuant to agreement reached during the August 2, 2004 mediation and in the MOU; and (6) participation in various interviews with current and former Charter employees and a current member of Charter's Board of Directors.

**II.    CLAIMS OF THE SETTLING DERIVATIVE PLAINTIFFS AND BENEFITS OF SETTLEMENT**

The Settling Derivative Plaintiffs believe that the claims asserted in the Derivative Actions have merit and that the evidence developed to date in the Derivative Actions supports the claims asserted. The Settling Derivative Plaintiffs assert and believe they would present supporting evidence at trial, that the Charter Board of Directors breached fiduciary duties owed to Charter and its shareholders by, among other things, causing or allowing the Company to disseminate to the market materially misleading inaccurate information through public statements, placing their own personal interests above the Company's, failing to prevent the Company and its officers and directors from committing acts which would, and did, injure the Company, and failing to establish and maintain adequate internal accounting controls at the Company, and failing to adequately supervise Company personnel in the performance of duties relating to, among other things, the public disclosures of the Company, the accounting of certain transactions, including those relating to the purchase of set top boxes from third party suppliers and related party transactions, including those referenced in the Company's public disclosures.

However, Derivative Settlement Counsel recognize and acknowledge the expense and length of continued proceedings, trial, and appeals. Derivative Settlement Counsel also has taken into account the uncertain outcome and the risk of any litigation, especially in

1244952

- 5 -

complex actions such as the Derivative Actions, as Derivative Settlement Counsel are also mindful of the inherent problems of proof under and possible defenses to the claims asserted in the Derivative Actions, including the defenses asserted by the Settling Derivative Defendants and Andersen during the litigation, in settlement negotiations, and in the mediation proceedings.

In light of the foregoing, Derivative Settlement Counsel believe that the Settlement set forth in this Stipulation confers substantial benefits upon Charter. Based on its evaluation, and its substantial experience in this area of the law, Derivative Settlement Counsel has determined that the Settlement set forth in the Stipulation is in the best interests of the Settling Derivative Plaintiffs and Charter.

## III.  SETTLING DERIVATIVE DEFENDANTS' AND ANDERSEN'S STATEMENT AND DENIALS OF WRONGDOING AND LIABILITY

The Settling Derivative Defendants and Andersen have denied and continue to deny each and all of the claims and contentions alleged by the Settling Derivative Plaintiffs. The Settling Derivative Defendants and Andersen assert that their conduct was proper and that there was no breach of fiduciary or other duties, deny any liability or wrongdoing whatsoever, including, but not limited to, each of the allegations asserted in the Derivative Actions, assert that the Derivative Actions are subject to a number of procedural defenses, and further assert that Charter has not sustained any damages as a result thereof. Settling Derivative Defendants and Andersen have further asserted, and continue to assert, that at all relevant times, they acted in good faith, and in a manner they reasonably believed to be in the best interests of Charter and its shareholders.

Nonetheless, the Settling Derivative Defendants and Andersen have concluded that further conduct of the Derivative Actions would be protracted and expensive, and that it is desirable that the Derivative Actions be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation in order to limit further expense, inconvenience and distraction, to dispose of the burden of protracted litigation, and (on the part of the Settling Derivative Defendants) to permit the operation of the Company's business without further distraction and diversion of the Company's executive personnel with respect to matters at issue in the Derivative Actions. The Settling Derivative Defendants and Andersen also have taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like this litigation.

The Settling Derivative Defendants and Andersen have, therefore, determined that it is desirable and beneficial to them that the Derivative Actions be settled in the manner and upon the terms and conditions set forth in this Stipulation. The Settling Derivative Defendants and Andersen enter into this Stipulation and Settlement without in any way acknowledging any fault, liability, or wrongdoing of any kind. There has been no adverse determination by any court against any of the Settling Derivative Defendants or Andersen on the merits of the claims asserted by the Settling Derivative Plaintiffs. Neither this Stipulation, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be construed as an admission or concession by any of the Settling Derivative Defendants or Andersen of the merit or truth of any of the allegations or wrongdoing of any kind on the part of any of the Settling Derivative Defendants or

Andersen. The Settling Derivative Defendants and Andersen enter into this Stipulation and Settlement based upon, among other things, the parties' agreement herein that, to the fullest extent permitted by law, neither this Stipulation nor any of the terms or provisions, nor any of the negotiations or proceedings connected therewith, shall be offered as evidence in the Derivative Actions or in any pending or future civil, criminal, or administrative action or other proceeding to establish any liability or admission by any of the Settling Derivative Defendants or Andersen, or to any of their respective Related Entities, or any other matter adverse to any of the Settling Derivative Defendants or Andersen, or any of their respective Related Entities, except as expressly set forth herein.

## IV.   TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Settling Derivative Plaintiffs, the Settling Derivative Defendants, and Andersen by and through their respective counsel of record, that, subject to the approval of the Court, the Derivative Actions and the Released Claims shall be finally and fully compromised, settled, and released, and the Derivative Actions shall be dismissed with prejudice, upon and subject to the terms and conditions of the Stipulation, as follows:

### 1.   Definitions

As used in the Stipulation the following terms have the meanings specified below:

1.1   "Andersen" shall mean Defendant Arthur Andersen LLP, AWSC Société Coopérative, en liquidation, and all of their past and present member firms, and all of their respective current and former partners, members, principals, participating principals, national directors, managing or other agents, management personnel, officers, directors, shareholders, administrators, servants, employees, consultants, advisors, insurers, reinsurers, attorneys, accountants, representatives, parent companies, subsidiaries, related entities, divisions, affiliates, predecessors, successors and assigns, along with the heirs, spouses, executors, administrators, insurers, reinsurers, representatives, estates, successors and assigns of any such persons or entities.

1.2   "Class Action Settlement Cash" shall mean the principal amount of $66.25 million in cash to be paid for and on behalf of the Settling Class Action Defendants pursuant to the settlement of the Class Action.

1.3   "Company" or "Charter" shall mean defendant Charter Communications, Inc., a Delaware corporation, and all of its predecessors, successors, present and former parents, subsidiaries, divisions, and related or affiliated entities.

1.4   "Current Charter Shareholders" shall mean all record and/or beneficial owners of Charter common stock as of January 24, 2005.

1.5   "Derivative Plaintiffs' Counsel" shall mean all counsel of record who entered an appearance in the Derivative Actions.

1.6    "Derivative Settlement Counsel" shall mean Wechsler Harwood LLP and Schiffrin & Barroway, LLP.

1.7    "Effective Date" shall mean the first date by which all of the events and conditions specified in Section IV, ¶ 6.2(a)-(i) of the Stipulation have been met and have occurred.

1.8    "Final" shall mean, with respect to the Judgment, the stipulated judgment dismissing with prejudice the State Court Derivative Actions, or the judgment(s) entered dismissing the Class Action with prejudice (collectively, the "Judgments"), that one of the following events has occurred: (1) the time for appealing the Judgments has expired; (2) following a final affirmance on appeal of the Judgments, the time to seek further discretionary review (including, without limitation, from the United States Supreme Court) has expired, or if discretionary review is allowed, such discretionary review proceedings are subsequently dismissed with prejudice or the Judgments are finally affirmed on discretionary review; or (3) following a final dismissal of an appeal from the Judgments, the time to seek further discretionary review (including, without limitation, from the United States Supreme Court) has expired, or if discretionary review is allowed, such discretionary review proceedings are subsequently dismissed with prejudice or the dismissal being challenged is itself finally affirmed on discretionary review.  Any proceeding or order, or any appeal or appeal for a writ of certiorari pertaining solely to any plan of allocation and/or application for attorneys' fees, costs or expenses, shall not in any way delay or preclude the Judgments from becoming Final.

1.9    "Judgment" shall mean the judgment to be rendered by the Court dismissing the Federal Court Derivative Action with prejudice, substantially in the form and content attached hereto as Exhibit B.

1.10   "Payment to Underwriters" shall mean Charter's issuance to the Law Firm of Hanson Peter Nye, for the benefit of Underwriters, shares of Charter Class A common stock having an aggregate value of $5 million, in accordance with the Underwriters Agreement. These shares shall be issued pursuant to section 3(a)(10) of the Securities Act of 1933 (the "Securities Act") and shall not constitute "restricted securities."

1.11   "Person" shall mean an individual, corporation (including all divisions and subsidiaries), partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, and assigns.

1.12   "Released Claims" shall collectively mean all claims (including "Unknown Claims" as defined in ¶ 1.21 below, but excluding the claims listed in ¶ 4.5 below), demands, rights, liabilities and causes of action of every nature and description whatsoever, known or unknown, whether in contract, tort, equity or otherwise, whether or not concealed or hidden, asserted or that might have been asserted in this or any other forum or proceeding, including, without limitation, claims for negligence, negligent supervision, gross negligence, indemnification, breach of duty of care and/or breach of duty of loyalty, fraud, misrepresentation, breach of fiduciary duty, negligent misrepresentation, unfair

competition, insider trading, professional negligence, mismanagement, corporate waste, breach of contract, or violations of any state or federal statutes, rules or regulations, including but not limited to any claims that arise from or relate to the matters or occurrences that were or could have been alleged in the Derivative Actions, or any claims related to the public disclosures or the transactions referenced therein, however described, through and including the period of time from the alleged date of the commencement of the class period (as set forth in the Class Action Settlement) until the date of the execution of this Stipulation by Settling Derivative Plaintiffs against the Released Derivative Parties (as defined in ¶ 1.13 below) which have been or could have been alleged in any of the Derivative Actions up through and including the date of this Stipulation is signed.

1.13    "Released Derivative Parties" shall mean each and every one of the following:  the Settling Derivative Defendants and all entities owned, affiliated or controlled by them, all current and former Charter directors and officers and each of their respective agents, employees, consultants, insurers, attorneys, advisors, successors, heirs, assigns, executors, personal representatives, marital communities and immediate families, and Andersen.

1.14    "Settling Class Action Defendants" shall mean Charter, Paul G. Allen, Jerald L. Kent, Carl E. Vogel, Kent Kalkwarf, David G. Barford, Paul E. Martin, David L. McCall, Bill Shreffler, Chris Fenger, James H. Smith III, and Andersen (to the extent the Court approves the Settlement with Andersen in the Class Action (the "Andersen Settlement") and the Andersen Settlement becomes Final pursuant to its terms).

1.15    "Settling Class Action Parties" shall mean Class Action Plaintiff and Settling Class Action Defendants.

1.16    "Settling Derivative Defendants" shall mean Ronald L. Nelson, Paul G. Allen, Marc B. Nathanson, Nancy B. Peretsman, William D. Savoy, John H. Tory, Carl E. Vogel, and Larry W. Wangberg.

1.17    "Settling Derivative Parties" shall mean Settling Derivative Defendants, Andersen, and Settling Derivative Plaintiffs.

1.18    "Settling Derivative Plaintiffs" shall mean Arthur J. Cohn, Kenneth Stacey, Aaron Cane, and Thomas Schimmel, on behalf of themselves and derivatively on behalf of Charter.

1.19    "Underwriters" shall mean Certain Underwriters of Lloyds' of London.

1.20    "Underwriters Agreement" shall mean the Settlement Agreement and Mutual Release executed by Charter and Underwriters, dated as of January 24, 2005, and attached hereto as Exhibit C.

1.21    "Unknown Claims" shall mean any Released Claims which the Settling Derivative Plaintiffs do not know or suspect to exist in his, her or its favor at the time of the release of the Released Derivative Parties which, if known by him, her or it, might have affected his, her or its settlement with and release of the Released Derivative Parties, or

might have affected his, her or its decision not to object to, or opt out of, this Settlement. With respect to any and all Released Claims, the Settling Derivative Parties stipulate and agree that, upon the Effective Date, the Settling Derivative Plaintiffs expressly waive and relinquish, and by operation of the Judgment shall have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of § 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

The Settling Derivative Plaintiffs expressly waive, and upon the Effective Date and by operation of the Judgment shall have waived any and all provisions, rights and benefits conferred by any law of the United States or of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code. The Settling Derivative Plaintiffs may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but each of them hereby stipulate and agree that the Settling Derivative Plaintiffs do settle and release, upon the Effective Date and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Settling Derivative Parties acknowledge that the foregoing waiver was bargained for and a key element of the Settlement of which this release is a part.

## 2.    **The Settlement Consideration**

2.1.    In full and final settlement of all claims asserted or referred to in the Derivative Actions, and all claims that have been or could be asserted against the Settling Derivative Defendants in the Derivative Actions, the Settling Derivative Defendants have agreed to substantially strengthen the Company's internal controls, processes and procedures through the adoption (in the Company's bylaws, where appropriate) of a new set for corporate governance principles, which are attached hereto as Exhibit D. In addition, Andersen has provided to the Company a release of potential claims against the Company, as set forth in ¶ 4.4 below, thereby enabling the Company to avoid the risk and cost of further litigation and to resolve fully and finally the matters at issue in the Derivative Actions and the Class Action.

2.2.    In addition to the substantial corporate governance changes and releases obtained, as a result of the initiation and prosecution of the Derivative Actions, participation in the Mediation, and the subsequent settlement of the Derivative Actions, the Settling Derivative Plaintiffs have helped to confer substantial financial benefits upon Charter, including: (1) helping to preserve and advance payment to Charter of funds from Charter's insurers for payment of defense costs that otherwise may have been borne by Charter and in

1244952                                    - 10 -

connection with the resolution of the Class Action; (2) helping to effectuate a global resolution of actions pending against Charter through participation in the mediation and settlement discussions; and (3) helping to ensure that the settlement of the Class Action provided a possibility of a financial benefit to the Company should the price of Charter stock increase above the valuation used for purposes of pricing the equity portion of the consideration in the Class Action settlement.

2.3.    The Company and its Board of Directors are satisfied that the foregoing constitutes reasonably equivalent value for the dismissal of the Derivative Actions with prejudice and the release of the Released Claims, and is a fair, reasonable and adequate resolution of the Derivative Actions and the Released Claims on the Company's behalf and is in the best interests of the Company and the Company's shareholders.

### 3.    Notice Order And Settlement Hearing

3.1.    Promptly after execution of the Stipulation, but in no event later than ten (10) days after the Stipulation is signed (unless such time is extended by the written agreement of Settling Derivative Plaintiffs' Counsel and counsel for the Settling Derivative Defendants), the Parties shall submit the Stipulation together with its Exhibits to the Court and shall jointly apply for entry of an order (the "Notice Order"), substantially in the form and content of Exhibit E hereto, requesting preliminary approval of the Settlement set forth in the Stipulation and approval for the mailing and publication of a Notice of Pendency and Proposed Settlement of the Derivative Actions to Current Charter Shareholders, which shall include the general terms of the Settlement set forth in the Stipulation, the general terms of the Fee and Expense Application (as defined below in ¶ 5.2), and the date of the Settlement Hearing (as defined below in ¶ 3.2).

3.2.    The Settling Derivative Parties shall request that, after notice is given, the Court hold a Hearing (the "Settlement Hearing") and finally approve this Settlement as set forth herein. If approval is granted, and subject to ¶ 6.3 below, the Settling Derivative Parties agree that the State Court Derivative Actions will be dismissed with prejudice pursuant to a stipulated judgment, substantially in the form and content of Exhibit F.

3.3.    All costs of notice associated with the implementation of the Settlement shall be paid out of the Class Action Settlement Cash paid by or on behalf of the Settling Class Action Defendants in proportion to their contribution thereto.

### 4.    Releases

4.1.    Upon the Effective Date, except as set forth in ¶ 4.5 below, the Settling Derivative Plaintiffs shall release, relinquish and discharge, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged each and all of the Released Derivative Parties from all Released Claims (including "Unknown Claims"), and from all claims (including "Unknown Claims"), arising out of, relating to, or in connection with the defense, or resolution of the Derivative Actions or the Released Claims. Claims for violation of this Stipulation (including any exhibits) are preserved.

4.2.     Upon the Effective Date, each of the Settling Derivative Defendants shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged the Settling Derivative Plaintiffs and Derivative Plaintiffs' Counsel from the filing and prosecution of any lawsuit or claim by the Settling Derivative Defendants based on any claims (including "Unknown Claims") alleged or which could have been alleged in the Derivative Actions against the Settling Derivative Plaintiffs or Derivative Plaintiffs' Counsel arising out of, relating to, or in connection with the commencement, prosecution, assertion or resolution of the Derivative Actions or the Released Claims.  Claims for violation of this Stipulation (including any exhibits) are preserved.

4.3.     Upon the Effective Date, except as set forth in ¶ 4.5 below, the Settling Derivative Defendants and Charter shall release, relinquish and discharge, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged Andersen from all claims arising out of, relating to, or in connection with the defense or resolution of the Derivative Actions.  Claims for violation of this Stipulation (including any exhibits) are preserved.

4.4.     Upon the Effective Date, except as set forth in ¶ 4.5 below, Andersen shall release, relinquish and discharge, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged Charter, the Settling Derivative Defendants and all entities owned, affiliated or controlled by them, all current and former Charter directors and officers and each of their respective agents, employees, consultants, insurers, attorneys, advisors, successors, heirs, assigns, executors, personal representatives, marital communities and immediate families from all claims arising out of, relating to, or in connection with the defense or resolution of the Derivative Actions.  Claims for violation of this Stipulation (including any exhibits) are preserved.

4.5.     However, in an abundance of caution and to avoid any representation to the contrary (but not to expand by implication the scope of this release), nothing in this Stipulation or the Judgment shall constitute a release of any of the following claims: (a) any claim between Charter and any current or former Charter employee regarding indemnification, advancement, and/or recoupment of fees, costs, and expenses; (b) any claim under state law between Charter and David L. McCall relating to (without limitation) any allegation of self-dealing, usurpation of corporate opportunities, fraud, or conversion in connection with McCall's performance of his duties as an officer of Charter; or (c) any claim regarding, relating to, or arising from, directly or indirectly, the "Equity Put" dispute arising from the acquisition of the cable systems owned by Bresnan Communications Company Limited Partnership in February 2000, as discussed on pages 112-113 of Charter's 2004 10-K; provided, however, that this ¶ 4.5 shall not affect the release of any claims brought derivatively on behalf of Charter, as set forth in ¶ 4.1.

4.6.     Except as otherwise expressly provided for in this Stipulation, the Settling Derivative Parties shall each bear their own respective attorneys' fees, expenses and costs incurred in connection with the conduct and settlement of the Derivative Actions, and the preparation, implementation and performance of the terms of this Stipulation.

5. **Derivative Plaintiffs' Counsel's Attorneys' Fees And Reimbursement Of Costs and Expenses**

5.1.    The Company recognizes and agrees that the actions taken or to be taken in response to the Derivative Claims, including the corporate governance provisions set forth in Exhibit D, have conferred substantial benefits on the Company, and that Derivative Plaintiffs' Counsel therefore should be entitled to a fee.

5.2.    The Settling Derivative Parties have agreed that an amount up to but no greater than $2.25 million shall be paid to Derivative Plaintiffs' Counsel from the Class Action Settlement Cash, subject to Court approval. Charter, Andersen, and the Settling Derivative Defendants shall not otherwise be liable for any fees or costs incurred by or awarded to Derivative Plaintiffs' Counsel. Charter agrees that it will not oppose any application submitted in the Class Action by Derivative Plaintiffs' Counsel for attorneys fees, costs and expenses (the "Fee and Expense Application") up to $2.25 million.

5.3.    The attorneys' fees, expenses and costs, including the fees of experts and consultants, as awarded by the Court (the "Fee and Expense Award"), up to $2.25 million, shall be transferred to Derivative Settlement Counsel from the Class Action Settlement Cash within five (5) business days after the Court executes an order awarding such fees and expenses. In the event that the Stipulation and the Settlement set forth herein or the Stipulation and the Settlement in the Class Action do not become Final for any reason, or the Judgment or the Order making the Fee and Expense Award is reversed or modified on appeal, and in the event that the Fee and Expense Award has been paid to any extent, then Derivative Plaintiffs' Counsel shall within five (5) business days from the event which precludes the Effective Date from occurring or such reversal or modification, refund to the Class Action Settlement Cash the fees, expenses, costs and interest previously paid to it from the Class Action Settlement Cash, including interest on any such amount at the average rate earned on the Class Action Settlement Cash from the time of withdrawal until the date of refund. Such refund shall be a joint obligation of the Derivative Plaintiffs' Counsel. Derivative Plaintiffs' Counsel, as a condition of receiving such fees and expenses, on behalf of themselves and each partner and/or shareholder of them, agree that the law firms and their partners and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing this ¶ 5.3 of the Stipulation. Without limitation, Derivative Plaintiffs' Counsel's law firms and their partners and/or shareholders agree that the Court may, upon application of Settling Derivative Defendants, summarily issue orders, including, but not limited to, judgments and attachment orders, and may make appropriate findings of or sanctions for contempt, against it should Derivative Plaintiffs' Counsel fail timely to repay fees and expenses pursuant to this ¶ 5.3 of the Stipulation.

5.4.    The Released Derivative Parties shall have no responsibility for, and no liability whatsoever with respect to any fee or expense award to Derivative Plaintiffs' Counsel, or to any other Person who may assert some claim thereto, except as provided herein.

5.5.    The procedure for and the allowance or disallowance by the Court in the Class Action of the fee and expense application presented by the Counsel for the Plaintiffs in that matter is not part of the Settlement set forth in the Stipulation, and is to be considered

1244952

- 13 -

by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of this Settlement and the Fee and Expense Application.

5.6.    The procedure for and the allowance or disallowance by the Court of the Fee and Expense Application are not part of this Settlement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of this Settlement. Any order or proceedings relating to the Fee and Expense Application, or any appeal from any order relating thereto, shall not operate to terminate or cancel the Stipulation, or affect or delay the finality of the Judgment approving the Stipulation and the Settlement of the Derivative Actions set forth herein.

5.7.    Derivative Settlement Counsel shall be solely responsible for allocating any compensation among any Derivative Plaintiff's Counsel for attorneys' fees and expenses. Charter, Andersen, and the Settling Derivative Defendants shall have no liability or responsibility therefor whatsoever.

### 6.    Conditions Of Settlement, Effect Of Disapproval, Cancellation Or Termination

6.1    The Settlement shall be terminated in the event that any of the following occurs: (1) any of the conditions set forth in ¶ 6.2 below is not satisfied; (2) the Settlement does not become Final for any reason; (3) failure on the part of any of the Settling Derivative Parties to abide, in any material respect, with the terms of this Stipulation.

6.2    Unless otherwise agreed to in writing, this Stipulation shall be terminated in the event that any of the following conditions is not met:

(a)    The Court has entered the Notice Order, as required by ¶ 3.1 and ¶ 3.2, above;

(b)    Preliminary and final approval of this Stipulation, independent of the determination of any award of attorneys' fees and expenses to Derivative Plaintiffs' Counsel;

(c)    Upon final approval of the Settlement, the State Court Derivative Actions are dismissed with prejudice as to all Settling Derivative Defendants and (subject to ¶ 6.3 below) Andersen pursuant to a stipulated judgment, substantially in the form and content of Exhibit F;

(d)    Entry of Judgment, substantially in the form and content of Exhibit B, by the U.S. District Court for the Eastern District of Missouri dismissing all Released Claims with prejudice and without costs to any party;

(e)    The Judgment has become Final;

(f)    Court approval of the Underwriters Agreement, including a determination that the terms and conditions of the Underwriters Agreement (including the Payment to Underwriters of $5 million in Charter common stock issued pursuant to section

3(a)(10) of the Securities Act and not constituting "restricted securities") are fair to all parties, including Underwriters;

       (g)    Settlement and dismissal with prejudice of the Class Action, as required by the Stipulation of Settlement with Charter for the Class Action dated as of January 24, 2005;

       (h)    That this Settlement is not otherwise terminated pursuant to the terms set forth in this Stipulation;

       (i)    That the settlement of the Class Action is not otherwise terminated pursuant to the terms set forth in the Stipulation of Settlement in the Class Action.

       6.3    If, at any time prior to the Effective Date, Andersen is ordered, either in the Class Action or the Shareholder Derivative Actions, to disclose any non-public information that Andersen determines, in its sole and absolute discretion, is proprietary or commercially sensitive, Andersen shall have the option, for a period of thirty days following entry of such order, to withdraw from this Stipulation by providing written notice thereof to Derivative Settlement Counsel and counsel for Charter and the Settling Derivative Defendants. In the event that Andersen withdraws from the Settlement pursuant to this ¶ 6.3, the Court shall approve the Settlement and enter the Judgment as to all remaining parties, and the State Court Derivative Actions shall be dismissed with prejudice as to the Settling Derivative Defendants and without prejudice as to Andersen. Notwithstanding the above, Andersen agrees that it shall not object to the bar order in the Class Action, as set forth in ¶ 6.2 of the Stipulation of Settlement with Charter in the Class Action.

       6.4    In the event that the Stipulation is not approved by the Court or the Settlement set forth in the Stipulation is terminated or fails to become effective in accordance with its terms, this Stipulation and all negotiations and proceedings relating hereto shall be without prejudice to any or all Settling Derivative Parties who shall be restored to their respective positions in the Derivative Actions as of August 4, 2004 as to the Settling Derivative Defendants, as of October 12, 2004 as to Andersen. In such event, the terms and provisions of the Stipulation, with the exception of ¶¶ 1.1-1.21, 5.3, 5.4, 5.5, 6.1-6.6, 7.2, 7.3, 7.6 herein, shall have no further force and effect with respect to the Settling Derivative Parties and shall not be used in the Derivative Actions or in any other proceeding for any purpose and any Judgment or Order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*.

       6.5    In the event this Stipulation shall be cancelled as set forth in ¶ 6.1 above, the Settling Derivative Plaintiffs and Settling Derivative Defendants shall, within two weeks of such cancellation, jointly request a status conference with the Court to be held on the Court's first available date. At such status conference, the Settling Derivative Plaintiffs and Settling Derivative Defendants shall ask the Court's assistance in scheduling continued proceedings in the Derivative Actions as between them. Pending such status conference or the expiration of sixty (60) days from the Settling Derivative Plaintiffs' and Settling Derivative Defendants' joint request for a status conference, whichever occurs first, none of the Settling Derivative Parties shall file or serve any further motions or discovery requests on any of the other Settling Derivative Parties in connection with the Derivative Actions nor

shall any response be due by any Settling Derivative Party to any outstanding discovery or pleading by any other Settling Derivative Party.

6.6    Neither a modification nor a reversal on appeal of any amount of attorneys fees, costs, expenses and interest awarded by the Court to any of the Derivative Plaintiffs' Counsel shall constitute a condition to the Effective Date or grounds for cancellation and termination of the Stipulation.

## 7.    **Miscellaneous Provisions**

7.1.    The Settling Derivative Parties (a) acknowledge that it is their intent to consummate this Settlement and Stipulation; and (b) agree to cooperate to the extent necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation.

7.2.    The Settling Derivative Defendants and Andersen have denied, and continue to deny, any and all allegations contained in the Derivative Actions, and they are entering into the Settlement in order to eliminate the burden, expense, and uncertainties of further litigation.  The Settlement and the provisions contained in this Stipulation and the MOU shall not be deemed, or offered or received in evidence as a presumption, a concession, or an admission of any fault, liability, or wrongdoing by any party, and except as required to enforce the Settlement, they shall not be offered or received in evidence or otherwise used by any person in these or any other actions or proceedings, whether civil, criminal, or administrative.

7.3.    No press announcement, press release, or other public statement concerning the Settlement may be made by any of the Settling Derivative Parties without approval from the other Settlement Derivative Parties, except as required by law.

7.4.    All of the Exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

7.5.    The Stipulation may be amended or modified, as is necessary to effect the terms of the Settlement, only by a written instrument signed by or on behalf of all Settling Derivative Parties or their successors-in-interest.

7.6.    The Stipulation and the Exhibits attached hereto constitute the entire agreement among the parties hereto.  The Settling Derivative Parties expressly warrant that, in entering into this Stipulation, they relied solely upon their own knowledge and investigation, and not upon any promise, representation, warrant, or other statement by any party or any person representing any party to this Stipulation, not expressly contained in this Stipulation or its Exhibits.  Except as otherwise provided herein, each party shall bear its own costs.

7.7.    Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any party hereto hereby warrants that such person has the full authority to do

1244952

- 16 -

so.  All orders and agreements entered during the course of the Derivative Actions relative to the confidentiality of information shall survive this Stipulation.

7.8.    The Stipulation may be executed by facsimile and in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  Counsel for the parties to the Stipulation shall exchange among themselves original signed counterparts and a complete set of original executed counterparts shall be filed with the Court.

7.9.    The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Derivative Parties.

7.10.    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all parties hereto and their counsel submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.

7.11.    The Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Missouri, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the laws of the State of Missouri without giving effect to that state's choice of law principles.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, as of ~~May 14~~ 2005.

DATED: _25 Janua, 06 04_      WECHSLER HARWOOD LLP

By: _Robert I. Harwood_

          Robert I. Harwood, Esq.

Attorneys for Arthur J. Cohn

DATED: _25 January 2005_      SCHIFFRIN BARROWAY, LLP

By: _Eric L. Zagar_     _with permission_

          Eric L. Zagar, Esq.

Attorneys for Kenneth R. Stacey

DATED:_____      IRELL & MANELLA LLP

By:_____

          David Siegel, Esq.

Attorneys for Defendants Ronald  L. Nelson, Marc B. Nathanson, Nancy B. Peretsman, William D. Savoy, John H. Tory, Carl E. Vogel, and Larry W. Wangberg, and Nominal Defendant Charter Communications, Inc.

DATED:_____      CHARTER COMMUNICATIONS, INC.

By:_____

Curtis S. Shaw, Esq.

Executive Vice-President, General Counsel and Secretary, Defendant Charter Communications, Inc.

1244952                   - 18 -

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, as of _____, 2005.

DATED:_____            WECHSLER HARWOOD LLP


By:_____

Robert I. Harwood, Esq.

Attorneys for Arthur J. Cohn

DATED:_____        SCHIFFRIN BARROWAY, LLP


By:_____

Eric L. Zagar, Esq.

Attorneys for Kenneth R. Stacey

DATED: 1/31/2005        IRELL & MANELLA LLP

By:_____

David Siegel, Esq.

Attorneys for Defendants Ronald L. Nelson, Marc B. Nathanson, Nancy B. Peretsman, William D. Savoy, John H. Tory, Carl E. Vogel, and Larry W. Wangberg, and Nominal Defendant Charter Communications, Inc.

DATED:_____        CHARTER COMMUNICATIONS, INC.


By:_____

Curtis S. Shaw, Esq.

Executive Vice-President, General Counsel and Secretary, Defendant Charter Communications, Inc.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, as of _____, 2005.

DATED:_____                          WECHSLER HARWOOD LLP


                                            By:_____

                                                Robert I. Harwood, Esq.

                                            Attorneys for Arthur J. Cohn


DATED:_____                      SCHIFFRIN BARROWAY, LLP


                                            By:_____
                                                Eric L. Zagar, Esq.

                                            Attorneys for Kenneth R. Stacey


DATED:_____                      IRELL & MANELLA LLP


                                            By:_____

                                                David Siegel, Esq.

                                            Attorneys for Defendants Ronald L. Nelson,
                                            Marc B. Nathanson, Nancy B. Peretsman,
                                            William D. Savoy, John H. Tory, Carl E.
                                            Vogel, and Larry W. Wangberg, and Nominal
                                            Defendant Charter Communications, Inc.


DATED: 2/1/05                               CHARTER COMMUNICATIONS, INC.


                                            By:_____
                                            Curtis S. Shaw, Esq.

                                            Executive Vice-President, General Counsel and
                                            Secretary, Defendant Charter Communications,
                                            Inc.


1244952                                     - 18 -

DATED:_____          MAYER, BROWN, ROWE & MAW LLP

                                By _____
                                    Jonathan C. Medow, Esq.

                                Attorneys for Defendant Arthur Andersen LLP

DATED:_____          FOSTER PEPPER & SHEFELMAN PLLC


                                By:_____
                                    Timothy J. Filer, Esq.

                                Attorneys for Defendant Paul G. Allen


DATED:_____          By:_____
                                    Ronald L. Nelson


DATED:_____          By:_____
                                    Marc B. Nathanson


DATED:_____          By:_____
                                    Nancy B. Peretsman


DATED:_____          By:_____
                                    William D. Savoy


1244952                         - 19 -

DATED:_____

MAYER, BROWN, ROWE & MAW LLP

By _____

Jonathan C. Medow, Esq.

Attorneys for Defendant Arthur Andersen LLP

DATED:_____

FOSTER PEPPER & SHEFELMAN PLLC

By:_____

Timothy J. Filer, Esq.

Attorneys for Defendant Paul G. Allen

DATED: 1/31/05

By:_____

Ronald L. Nelson

DATED:_____

By:_____

Marc B. Nathanson

DATED:_____

By:_____

Nancy B. Peretsman

DATED:_____

By:_____

William D. Savoy

1344962

- 19 -

DATED:_____          MAYER, BROWN, ROWE & MAW LLP


                                By _____

                                    Jonathan C. Medow, Esq.

                                Attorneys for Defendant Arthur Andersen LLP

DATED:___2|1| 05___             FOSTER PEPPER & SHEFELMAN PLLC

                                By _____
                                    Timothy J. Filer, Esq.

                                Attorneys for Defendant Paul G. Allen


DATED:_____          By:_____
                                    Ronald L. Nelson


DATED:_____          By:_____
                                    Marc B. Nathanson


DATED:_____          By:_____
                                    Nancy B. Peretsman


DATED:_____          By:_____
                                    William D. Savoy

1244952                         - 19 -

02-01-2005   11:53   From-CHARTER COMMUNICATIONS                 314 965 8793      T-562   P.002/004   F-814
FEB-U1-U5 TUE U8:55 HM   FINKU FNIINFINDUN         f 30f f HUf   U3 V f f ULUU f

DATED:_____

MAYER, BROWN, ROWE & MAW LLP

By _____

Jonathan C. Medow, Esq.

Attorneys for Defendant Arthur Andersen LLP

DATED:_____

FOSTER PEPPER & SHEFELMAN PLLC

By:_____

Timothy J. Filer, Esq.

Attorneys for Defendant Paul G. Allen

DATED:_____

By:_____

Ronald L. Nelson

DATED:_____

By:_____

Marc B. Nathanson

DATED:_____

By:_____

Nancy B. Peretsman

DATED:_____

By:_____

William D. Savoy

DATED:_____          MAYER, BROWN, ROWE & MAW LLP

                                    By _____

                                        Jonathan C. Medow, Esq.

                                    Attorneys for Defendant Arthur Andersen LLP

DATED:_____          FOSTER PEPPER & SHEFELMAN PLLC


                                    By:_____
                                        Timothy J. Filer, Esq.

                                    Attorneys for Defendant Paul G. Allen


DATED:_____          By:_____
                                        Ronald L. Nelson


DATED:_____          By:_____
                                        Marc B. Nathanson


DATED:_____          By: _Nancy B. Peretsman_____
                                        Nancy B. Peretsman


DATED:_____          By:_____
                                        William D. Savoy


- 19 -

DATED:_____          MAYER, BROWN, ROWE & MAW LLP


                                By _____

                                   Jonathan C. Medow, Esq.

                                Attorneys for Defendant Arthur Andersen LLP

DATED:_____          FOSTER PEPPER & SHEFELMAN PLLC



                                By:_____
                                   Timothy J. Filer, Esq.

                                Attorneys for Defendant Paul G. Allen



DATED:_____          By:_____
                                   Ronald L. Nelson



DATED:_____          By:_____
                                   Marc B. Nathanson



DATED:_____          By:_____
                                   Nancy B. Peretsman



DATED: _1/31/05_                By:_____
                                   William D. Savoy


1244952                              - 19 -

02-01-2005  11:00   From-CHARTER COMMUNICATIONS          314 965 8793        T-560  P.004/004  F-811
FEB-01-2005  12:14PM   FROM-                                  +                   1-255  P.003/003  F-196

DATED:_____          By: _____
                                     John H. Tory

DATED:_____          By:_____
                                     Carl E. Vogel

DATED:_____          By:_____
                                     Larry W. Wangberg

191972                              - 20 -

DATED:_____       By:_____

                                        John H. Tory


DATED: _January 25,_          By:_____
        _2005_
                                        Carl E. Vogel


DATED:_____       By:_____

                                        Larry W. Wangberg

**DATED:**_____      **By:**_____

                                      John H. Tory


DATED:_____      By:_____

                                      Carl E. Vogel


**DATED:**_____      By: _____

                                      Larry W. Wangberg