EXECUTION COPY

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| IN RE CHARTER COMMUNICATIONS, INC. SECURITIES LITIGATION | MDL DOCKET NO. 1506 (CAS) ALL CASES |
| STONERIDGE INVESTMENT PARTNERS LLC, Individually and On Behalf of All Others Similarly Situated, | Consolidated Case No. 4:02-CV-1186 CAS |

Plaintiff,

v.

CHARTER COMMUNICATIONS, INC., PAUL ALLEN, JERALD L. KENT, CARL E. VOGEL, KENT KALKWARF, DAVID G. BARFORD, PAUL E. MARTIN, DAVID L. McCALL, BILL SHREFFLER, CHRIS FENGER, JAMES H. SMITH, III, SCIENTIFIC-ATLANTA, INC., MOTOROLA, INC. and ARTHUR ANDERSEN, LLP,

Defendants.

## STIPULATION OF SETTLEMENT
## WITH DEFENDANT CHARTER COMMUNICATIONS, INC. AND RELATED
## INDIVIDUAL DEFENDANTS

This Stipulation of Settlement (the "Stipulation"), dated as of January 24, 2005, is made and entered into by and among the following parties to the above-entitled action, by and through their respective counsel of record: (1) the Class Action Plaintiff (as defined below), on behalf of itself and each of the Settlement Class Members (as defined below); and (2) the Settling Class Action Defendants (as defined below), by and through their respective counsel of record in the Class Action. The Settlement set forth in this Stipulation (the "Settlement") is intended by the Settling Class Action Parties (as defined below) to fully, finally and forever resolve, discharge and settle the Released Claims (as defined below), upon and subject to the terms and conditions hereof.

1244965

## I. THE CLASS ACTION AND RELATED LITIGATION

### a. Background

Charter Communications, Inc. ("Charter" or the "Company," as defined below) is a broadband communications company. The Company provides analog video, digital video, cable modem, and telephony services to more than 6 million customers residing in 37 different states. Charter is headquartered in St. Louis, Missouri. Arthur Andersen LLP (as defined below, "Andersen") served as Charter's outside auditor for fiscal years 1999-2001.

On July 18, 2002, a Merrill Lynch analyst issued a report that questioned several of Charter's accounting practices, including the capitalization of certain customer service representative costs. The following day, the price of Charter's common stock declined from $4.06 per share to $3.50 per share.

On August 16, 2002, Charter announced that the U.S. Attorney's Office for the Eastern District of Missouri had initiated a grand jury investigation into certain of Charter's operations. The day after this announcement, the price of Charter's common stock declined from $2.71 per share to $2.53 per share.

On April 1, 2003, Charter announced that it was restating its financial reports for 2000 and 2001, and the first three quarters of 2002.

On July 24, 2003, a Grand Jury indicted Settling Class Action Defendants David G. Barford, Kent Kalkwarf, David L. McCall, and James H. Smith, III for a conspiracy allegedly carried out from in or about July 2001 through March 2002 to inflate Charter's subscriber numbers and subscriber growth numbers. It further charged Settling Class Action Defendants Barford and Kalkwarf with causing Charter to enter into allegedly sham agreements with Scientific-Atlanta, Inc. ("Scientific-Atlanta") and Motorola, Inc. ("Motorola") in the Fall of 2000. Settling Class Action Defendants McCall, Barford, Smith, and Kalkwarf have pled guilty to one count of conspiracy to commit wire fraud to inflate Charter's subscriber numbers.

On July 27, 2004, the Securities and Exchange Commission ("SEC") filed an Order Instituting Cease-And-Desist Proceedings, Making Findings, And Imposing A Cease-And-Desist Order Pursuant to Section 21C of the Securities Exchange Act of 1934 (the "SEC Order") on the consent of Charter, which neither admitted nor denied the allegations therein, regarding certain subscriber count practices and the accounting for certain agreements with Scientific-Atlanta and Motorola. The SEC Order did not allege any wrongdoing regarding Charter's accounting, except with respect to the agreements with Motorola and Scientific-Atlanta.

### b. The Class Actions

On and after July 31, 2002, fourteen federal securities class action complaints, including *StoneRidge Investment Partners LLC v. Charter Communications, Inc.,* No. 4:02-CV-1186 CAS, were filed against Charter and various other defendants, including Paul G. Allen, Jerald L. Kent, Carl E. Vogel, Kent Kalkwarf, David G. Barford, Paul E. Martin, David L. McCall, Bill Shreffler, Chris Fenger, James H. Smith III, Scientific-Atlanta,

1244965

Motorola, and Andersen. These complaints were consolidated, pursuant to order of the Multi-District Litigation Panel, in the U.S. District Court for the Eastern District of Missouri, and captioned *In re Charter Communications, Inc. Securities Litigation*, MDL Docket No. 1506 (CAS) (the "Class Action").

By Order dated April 16, 2003, the Court appointed StoneRidge Investment Partners, LLC as lead plaintiff (hereinafter "Class Action Plaintiff"), and appointed Pomerantz Haudek Block Grossman & Gross LLP as lead counsel (hereinafter "Class Action Plaintiff's Counsel").

Class Action Plaintiff's Counsel, aided by private investigators and forensic accountants, conducted a thorough investigation of the claims prior to filing an Amended Consolidated Class Action Complaint (the "Amended Complaint") on August 5, 2003. The Amended Complaint asserted claims against Charter, the Individual Defendants, Andersen, Scientific Atlanta and Motorola for alleged violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder, and sections 11, 12 and 15 of the Securities Act of 1933. The Amended Complaint sought recovery for purchasers of Charter common stock during the period of November 8, 1999 through July 17, 2002, and damages through August 16, 2002. Class Action Plaintiff subsequently amended the Amended Complaint to include a class from July 17, 2002 to August 16, 2002, when the grand jury investigation was first announced (the "Second Amended Complaint").

The Amended Complaint and the Second Amended Complaint alleged that during the Settlement Class Period (as defined below), Charter issued false and misleading statements that materially inflated the Company's reported operating cash flow growth rate, by among other things, improperly accounting for costs associated with customer service representatives, acquisitions of new customers, and other matters. Class Action Plaintiff asserted that these manipulations boosted Charter's operating cash flow by over $400 million during the Settlement Class Period. In addition, the Amended Complaint and the Second Amended Complaint alleged that Charter artificially inflated its reported growth rate for new customers by improperly delaying the termination of a significant number of subscribers who had either requested such termination or were significantly delinquent in payments. Finally, Class Action Plaintiff alleged that Charter engaged in a kick-back scheme with Motorola and Scientific Atlanta, whereby Charter paid these suppliers $20 more for certain equipment (digital set top boxes) in return for an equivalent amount of advertising spending by the suppliers. Accounting manipulation for these transactions allegedly enabled Charter to boost its income for fourth quarter 2000 by $17 million.

On August 26, 2003, Charter filed a Motion to Dismiss the Class Action, which Class Action Plaintiff opposed. Other defendants in the Class Action filed Motions to Dismiss between September 8, 2003 and October 17, 2003, which the Class Action Plaintiff also opposed. Charter, along with various other defendants, asserted that some of the statements alleged to be misleading were in fact not misleading, and that the alleged inflation of customers, operating cash flow, and revenues was immaterial as a matter of law relative to the total number of Charter customers and the Company's total cash flow and revenues. Charter also asserted that the decline in its stock price was due to general cable industry related matters, including intense competition from satellite TV providers, and not any revelation of alleged wrongdoing. Charter also asserted that the SEC had previously

1244965

approved of its accounting for matters challenged in the Amended Complaint, and had subsequently changed its interpretation of Generally Accepted Accounting Principles ("GAAP") applicable to cable companies, thereby prompting a significant portion of the restatement. Many of the Individual Defendants also asserted that the Amended Complaint failed to adequately allege any direct participation or knowledge of the alleged wrongdoing.

The hearing on the Motions to Dismiss of the Settling Class Action Defendants has been taken off-calendar in light of the Settlement.

### c. The Shareholder Derivative Actions

On or after September 12, 2002, three derivative actions were filed in the Circuit Court for the City of St. Louis (the "State Court"), entitled *Kenneth Stacey, Derivatively on Behalf of Nominal Defendant Charter Communications, Inc. v. Ronald L. Nelson, et al., and Charter Communications, Inc.*, No. 022-10625, *Aaron Cane, Derivatively on behalf of Nominal Defendant Charter Communications, Inc., v. Ronald L. Nelson, et al., and Charter Communications, Inc.*, No. 022-11450, and *Thomas Schimmel, Derivatively on behalf of Nominal Defendant Charter Communications, Inc. v. Ronald L. Nelson, et al., and Charter Communications, Inc.*, No. 044-0858 (the "State Court Shareholder Derivative Actions"). On December 17, 2002, the Court granted Stacey and Cane's motion to: (1) consolidate the State Court Derivative Actions; and (2) appoint Schiffrin & Barroway, LLP, as Lead Counsel in the State Court Derivative Actions.

On February 12, 2003, a derivative action was filed in the United States District Court for the Eastern District of Missouri, entitled *Arthur J. Cohn, Derivatively on behalf of Nominal Defendant Charter Communications, Inc. v. Ronald L. Nelson, et al., and Charter Communications, Inc.*, Case No. 4:03CV00177 ERW (the "Federal Court Shareholder Derivative Action") (together with the State Court Shareholder Derivative Actions, the "Shareholder Derivative Actions").

The Complaints in the Shareholder Derivative Actions name as defendants the following officers and members of Charter's Board of Directors: Ronald L. Nelson, Paul G. Allen, Marc B. Nathanson, Nancy B. Peretsman, William D. Savoy, John H. Tory, Carl E. Vogel, and Larry W. Wangberg. Andersen was named as a defendant in the State Court Derivative Actions.

The Shareholder Derivative Complaints alleged that the Charter Board of Directors breached the fiduciary duties it owed to Charter and its shareholders by, among other things, causing or allowing the Company to disseminate to the market materially misleading or inaccurate information through public statements, placing their own personal interests above the Company's, and failing to prevent the Company and its officers and directors from committing acts which would, and did, injure the Company, and failing to establish and maintain adequate internal accounting controls at the Company.

All proceedings in the Shareholder Derivative Actions were stayed pending resolution of the Motions to Dismiss in the Class Action.

1244965

### d. Settlement Negotiations and Mediation

On March 22 and 23, 2004, April 13 and 14, 2004, May 7, 2004, June 16, 2004, and August 2, 2004, the Settling Class Action Parties, through their respective counsel, participated in lengthy mediation sessions with Hon. Edward A. Infante (Ret.). In addition to negotiations prior to and discussions during the mediation sessions, the settling parties to the Derivative Actions and their insurers, through their respective counsel, participated in the August 2, 2004 mediation session. During these meetings, which followed extensive briefing of Judge Infante, the participants discussed with Judge Infante, among other things, the Settling Class Action Parties' respective claims and defenses, expert damages analyses, legal analyses, the discovery and motion practice conducted and expected to be conducted in the Class Action, the evidence expected to be offered by the parties at trial, and other important factual and legal issues and matters relating to the merits of the Class Action.

On August 5, 2004, the Settling Class Action Parties agreed to a Memorandum of Understanding regarding settlement of the Class Action. The terms of the Memorandum are reflected in and superseded by this Stipulation.

Also on August 5, 2004, the parties to the Shareholder Derivative Actions, with the exception of Andersen, agreed to a Memorandum of Understanding regarding the settlement of those actions. Concurrently with the submission of this Stipulation, the parties to the Shareholder Derivative Actions will submit a Stipulation Re: Settlement of Derivative Claims to the Court. The Shareholder Derivative Actions Settlement is conditioned, among other things, upon the Settlement being approved by the Court, a judgment thereon being entered, that judgment becoming Final, and the dismissal with prejudice of the State Court Shareholder Derivative Actions.

By Memorandum Decision dated October 12, 2004, the Honorable Charles A. Shaw denied the Motion to Dismiss by Andersen, but granted the Motion to Dismiss by Scientific-Atlantic and Motorola. Class Action Plaintiff filed a Motion for Reconsideration on October 26, 2004, which was denied on December 20, 2004. Class Action Plaintiff has appealed this decision.

Subsequent to the October 12, 2004 decision, negotiations took place between the Class Action Plaintiff and Andersen that resulted in an agreement whereby all claims in the Class Action and the Derivative Actions against Andersen will be settled.

### e. Discovery, Investigation, and Research Conducted by Plaintiff

Class Action Plaintiff's Counsel has conducted discovery and investigation during the prosecution of the Class Action. This discovery and investigation has included: (1) inspection of documents produced by Settling Class Action Defendants pursuant to agreement during the Mediation and in the Memorandum of Understanding; (2) interviews with various current and former Charter employees; (3) consultations with experts; (4) review of Charter's public filings, annual reports, and other public statements; and (5) research of the applicable law with respect to the claims asserted in the Class Action and the potential defenses thereto.

## II.  CLAIMS OF THE CLASS ACTION PLAINTIFF AND BENEFITS OF SETTLEMENT

The Class Action Plaintiff believes that the claims asserted in the Class Action have merit and that the evidence developed to date in the Class Action supports the claims asserted. The Class Action Plaintiff asserts and believes it would present supporting evidence at trial, that defendants caused the price of Charter common stock to be artificially inflated during the Settlement Class Period by the issuance of materially false statements and by omitting to state material information concerning Charter and that as a result, Class Action Plaintiff and Settlement Class Members were injured.

However, Class Action Plaintiff's Counsel recognizes and acknowledges the expense and length of continued proceedings, trial, and appeals. Class Action Plaintiff's Counsel also has taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as the Class Action. Class Action Plaintiff's Counsel is also mindful of the inherent problems of proof under and possible defenses to the federal securities law violations asserted in the Class Action, including the defenses asserted by defendants during the litigation, in motions on the pleadings, settlement negotiations and in the mediation proceedings.

In light of the foregoing, Class Action Plaintiff's Counsel believes that the Settlement confers substantial benefits upon the Settlement Class (as defined below) and Settlement Class Members. Based on its evaluation, Class Action Plaintiff's Counsel has determined that the Settlement is in the best interests of the Class Action Plaintiff and the Settlement Class.

## III.  SETTLING CLASS ACTION DEFENDANTS' STATEMENT AND DENIALS OF WRONGDOING AND LIABILITY

The Settling Class Action Defendants have denied and continue to deny each and all of the claims and contentions alleged by the Class Action Plaintiff on behalf of the Settlement Class. The Settling Class Action Defendants also have denied and continue to deny, *inter alia*, the allegations that the prices of Charter stock were artificially inflated by reasons of alleged misrepresentations, non-disclosures or otherwise, or that the Class Action Plaintiff or the Settlement Class were harmed by the conduct alleged in the Class Action. Settling Class Action Defendants believe that throughout the Settlement Class Period (as defined below) they fully and adequately disclosed all material facts regarding Charter and made no misrepresentations of material facts regarding Charter.

Nonetheless, the Settling Class Action Defendants have concluded that further conduct of the Class Action would be protracted and expensive, and that it is desirable that the Class Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation in order to limit further expense, inconvenience and distraction, to dispose of the burden of protracted litigation, and to permit the operation of the Company's business without further distraction and diversion of the Company's executive personnel with respect to matters at issue in the Class Action. The Settling Class Action Defendants also have taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like this litigation.

1244965

The Settling Class Action Defendants have, therefore, determined that it is desirable and beneficial to them that the Class Action be settled in the manner and upon the terms and conditions set forth in this Stipulation. The Settling Class Action Defendants enter into this Stipulation and Settlement without in any way acknowledging any fault, liability, or wrongdoing of any kind. There has been no adverse determination by any court against any of the Settling Class Action Defendants on the merits of the claims asserted by the Class Action Plaintiff. Neither this Stipulation, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be construed as an admission or concession by any of the Settling Class Action Defendants of the merit or truth of any of the allegations or wrongdoing of any kind on the part of any of the Settling Class Action Defendants. The Settling Class Action Defendants enter into this Stipulation and Settlement based upon, among other things, the Settling Class Action Parties' agreement herein that, to the fullest extent permitted by law, neither this Stipulation nor any of the terms or provisions, nor any of the negotiations or proceedings connected therewith, shall be offered as evidence in the Class Action or in any pending or future civil, criminal, or administrative action or other proceeding to establish any liability or admission by any of the Settling Class Action Defendants or any other matter adverse to any of the Settling Class Action Defendants or any of their respective related entities, except as expressly set forth herein.

## IV. TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Class Action Plaintiff (for itself and the Settlement Class Members), and the Settling Class Action Defendants, by and through their respective counsel of record, that, subject to the approval of the Court, the Class Action and the Released Claims shall be finally and fully compromised, settled, and released, and the Class Action shall be dismissed with prejudice, upon and subject to the terms and conditions of the Stipulation, as follows:

### a. Definitions

As used in the Stipulation the following terms have the meanings specified below:

1.1   "Andersen" shall mean Defendant Arthur Andersen LLP, AWSC Société Coopérative, en liquidation, and all of their past and present member firms, and all of their respective current and former partners, members, principals, participating principals, national directors, managing or other agents, management personnel, officers, directors, shareholders, administrators, servants, employees, consultants, advisors, insurers, reinsurers, attorneys, accountants, representatives, parent companies, subsidiaries, related entities, divisions, affiliates, predecessors, successors and assigns, along with the heirs, spouses, executors, administrators, insurers, reinsurers, representatives, estates, successors and assigns of any such persons or entities.

1.2   "Authorized Claimant" shall mean any Settlement Class Member whose claim for recovery has been allowed pursuant to the terms of the Stipulation.

1.3   "Charter" or "Company" shall mean defendant Charter Communications, Inc., a Delaware corporation, and all of its predecessors, successors, present and former parents, subsidiaries, divisions, and related or affiliated entities.

1.4     "Charter's Insurance Carriers" shall mean Liberty International, Inc. ("Liberty") and Certain Underwriters of Lloyds' of London ("Underwriters").

1.5     "Claimant" shall mean any Settlement Class Member who files a Proof of Claim in such form and manner, and within such time, as the Court shall prescribe.

1.6     "Claims Administrator" shall mean Berdon Claims Administration LLC, the firm appointed by the Court to administer this Settlement.

1.7     "Class Action Defendants" shall mean Charter, Paul G. Allen, Jerald L. Kent, Carl E. Vogel, Kent Kalkwarf, David G. Barford, Paul E. Martin, David L. McCall, Bill Shreffler, Chris Fenger, James H. Smith III, Scientific-Atlanta, Inc, Motorola, Inc., and Andersen.

1.8     "Effective Date" shall mean the first date by which all of the events and conditions specified in Section IV, ¶ 10.2(i)-(xi) of the Stipulation have been met and have occurred.

1.9     "Escrow Agents" shall mean Charter, on the one hand, and Class Action Plaintiff's Counsel and/or the Claims Administrator, on the other hand, until such time as the Judgment is entered, at which time Charter shall resign as Escrow Agent and shall have no further supervisory responsibilities or obligations with respect to the Escrow Account.

1.10    "Escrow Account" shall mean the interest-bearing escrow account to which the Settlement Cash will be transferred no later than five (5) business days after preliminary approval of the Settlement of the Class Action to be controlled by the Escrow Agents, and to which the Settlement Securities will be transferred after entry of Judgment.

1.11    "Final" shall mean, with respect to the Judgment or the judgment(s) entered dismissing the Shareholder Derivative Actions with prejudice in accordance with the terms of the Stipulation of Settlement in the Derivative Actions (the "Derivative Judgment"), that one of the following events has occurred: (1) the time for appealing the Judgment or the Derivative Judgment (as the case may be) has expired; (2) following a final affirmance on appeal of the Judgment or the Derivative Judgment (as the case may be), the time to seek further discretionary review (including, without limitation, from the United States Supreme Court) has expired, or if discretionary review is allowed, such discretionary review proceedings are subsequently dismissed with prejudice or the Judgment or Derivative Judgment (as the case may be) is finally affirmed on discretionary review; or (3) following a final dismissal of an appeal from the Judgment or the Derivative Judgment (as the case may be), the time to seek further discretionary review (including, without limitation, from the United States Supreme Court) has expired, or if discretionary review is allowed, such discretionary review proceedings are subsequently dismissed with prejudice or the dismissal being challenged is itself finally affirmed on discretionary review.  Any proceeding or order, or any appeal or appeal for a writ of certiorari pertaining solely to any plan of allocation and/or application for attorneys' fees, costs or expenses, shall not in any way delay or preclude the Judgment or the Derivative Judgment from becoming Final.

1244965